# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| THE AMERICAN ASSOCIATION FOR DISABILITY JUSTICE ("AADJ"), ON BEHALF OF ITS MEMBERS AND ALL OTHER SIMILARLY SITUATED; LARRY MILLER ON BEHALF OF THE ESTATE OF JOHN MILLER; AND JOHN HODGES; INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § § § § § § § § § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | **CIVIL ACTION NO. 1:26-cv-00564-RP** |
| EPIC SYSTEMS CORPORATION, AND THEIR AFFILIATES, SUBSIDIARIES, AND PARENT COMPANIES, | § § § § § § | **ORAL ARGUMENT REQUESTED** |
| **Defendant.** | § § | |

## DEFENDANT EPIC SYSTEMS CORPORATION'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

ARGUMENT ..........................................................................................................................3

I.      NO ANTICOMPETITIVE CONDUCT (COUNTS I–V). ....................................................3

        A.      Plaintiffs' Product Design Claims Are Not Actionable............................................3

        B.      Epic Has No Antitrust Duty To Deal with Competitors............................................6

II.     PLAINTIFFS FAIL TO ALLEGE A RELEVANT PRODUCT MARKET FOR
        THEIR ATTEMPTED MONOPOLIZATION CLAIMS
        (COUNTS II AND V)..........................................................................................................7

III.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE MONOPOLY POWER IN THE
        PURPORTED ENTERPRISE EHR SOFTWARE MARKET
        (COUNTS I, III–IV). ........................................................................................................8

IV.     PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ANTITRUST INJURY IN THE
        PURPORTED ENTERPRISE EHR SOFTWARE MARKET
        (COUNTS I, III–IV). ........................................................................................................9

V.      PLAINTIFFS ABANDONED ALL REMAINING CLAIMS
        (COUNTS VI–IX). ..........................................................................................................10

CONCLUSION.......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*,
 776 F.3d 321 (5th Cir. 2015) ...............................................................................................8

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
 592 F.3d 991 (9th Cir. 2010) ............................................................................................3, 4

*Big River Indus., Inc. v. Headwaters Res., Inc.*,
 971 F. Supp. 2d 609 (M.D. La. 2013)................................................................................8, 9

*Elson v. Black*,
 56 F.4th 1002 (5th Cir. 2023) ...............................................................................................6

*Fed. Trade Comm'n v. Meta Platforms, Inc.*,
 811 F. Supp. 3d 67 (D.D.C. 2025) ........................................................................................8

*McClelland v. Katy Indep. Sch. Dist.*,
 63 F.4th 996 (5th Cir. 2023) ...............................................................................................10

*Norris v. Hearst Tr.*,
 500 F.3d 454 (5th Cir. 2007) ..............................................................................................10

*NYNEX Corp. v. Discon, Inc.*,
 525 U.S. 128 (1998)...............................................................................................................5

*Power Analytics Corp. v. Operation Tech., Inc.*,
 820 F. App'x 1005 (Fed. Cir. 2020) ......................................................................................6

*RecoveryX Livingston L.L.C. v. City of Livingston*,
 No. 9:24-CV-00193, 2026 WL 811039 (E.D. Tex. Mar. 24, 2026) ......................................9

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
 842 F.3d 883 (5th Cir. 2016) .............................................................................................3, 5

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
 786 F. Supp. 2d 1190 (S.D. Tex. 2009) ..............................................................................8, 9

*Rx Sols., Inc. v. Caremark, L.L.C.*,
 164 F.4th 436 (5th Cir. 2026) ...............................................................................................7

*Simon & Simon, PC v. Align Tech., Inc.*,
 No. CV 19-506 (LPS), 2020 WL 1975139 (D. Del. Apr. 24, 2020) ......................................4

*Spectrum Sports, Inc. v. McQuillan*,
 506 U.S. 447 (1993)...............................................................................................................8

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ........................................................................................4, 6

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ..........................................................................................................5

*Walgreen Co. v. AstraZeneca Pharms. L.P.*,
    534 F. Supp. 2d 146 (D.D.C. 2008) ...............................................................................4, 5

**Statutes & Rules**

Fed. R. Civ. P. Rule 8(a) ........................................................................................................6

Fed. R. Civ. P. Rule 8(d) ........................................................................................................7

Fed. R. Civ. P. Rule 9(b) ........................................................................................................6

**DEFENDANT'S REPLY – Page iv**

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that this case never should have been brought and cannot withstand scrutiny. Plaintiffs outright abandon four of their claims, and their attempts to salvage the remaining five doom them even further. Instead of addressing the legal deficiencies in their claims, Plaintiffs argue that Epic's Motion quibbles with the Complaint's factual allegations. Not so. Epic made clear that it disputes those facts, but emphasized that any factual disputes need not be resolved to dismiss this case. For example, Epic pointed out that it is in fact *the leader* in facilitating the submission of medical records to the Social Security Administration ("SSA")—as recognized by the SSA and shown by the millions of records that providers using Epic software send directly to the SSA every year (Mot. 1)[1]—but specifically did not put those facts at issue in its Motion. Instead, the Motion accepts Plaintiffs' made-up factual allegations as true, as it must, and demonstrates that those allegations fail to state a viable legal claim. (Mot. 8.) Plaintiffs' refrain that Epic merely offers a "competing factual narrative" (Opp. 7–8), and their reliance on unrelated decisions involving Epic, do not transform legal deficiencies into a fact dispute.

And the legal deficiencies here are fatal. *First*, as the Motion established, Plaintiffs fail to allege any form of anticompetitive conduct. Plaintiffs' theory of anticompetitive conduct rests entirely on inactionable product design. (Mot. 10–12.) In their Opposition, Plaintiffs concede that "antitrust law does not require firms to redesign products" (Opp. 16), which should end the inquiry. Plaintiffs try to recast their product-design allegations under a different label: "platform conduct". (Opp. 15.) Plaintiffs' relabeling exercise fails because, whichever label is used, Plaintiffs' claim *is* based on inactionable product design. Plaintiffs misread the *Microsoft* decision from the D.C. Circuit as some sort of panacea, which it is not. The Opposition also

---

[1] Unless noted, all emphasis is added, and internal citations and quotations are omitted.

**DEFENDANT'S REPLY – Page 1**

gestures at non-antitrust regulatory regimes that are allegedly in tension with Epic's product design.  (Opp. 16–17.)  That is wrong, but even if it were true, that does not render product design actionable under the antitrust laws.  Finally, the Opposition alleges (for the first time) that Epic engaged in misleading marketing, but that too is *not* an antitrust violation.  (Section I.)

*Second*, the Motion established that Plaintiffs fail to allege that Epic is attempting to monopolize a purported market for "interoperable medical record access and aggregation", because Plaintiffs fail to adequately define that market and, to the extent they do, Plaintiffs' own allegations establish that Epic does not compete in it.  (Mot. 3, 15–17.)  The Opposition does not mention these attempted monopolization claims, and does nothing to defend this market definition by reference to reasonable interchangeability, cross-elasticity of demand, or any other measure of market definition recognized under the antitrust laws.  Nor does the Opposition dispute that by the Complaint's own allegations, Epic does not compete in this alleged market, which is fatal to Plaintiffs' antitrust claims based on that market.  (Section II.)

*Third*, the Motion established that the allegation in the Complaint that Epic's share of the purported market for "enterprise EHR systems used by hospitals and large health systems" is only 40% is too low to support an allegation of monopoly power.  (Mot. 3, 17–18.)  In their Opposition, Plaintiffs do not dispute the import of their allegations, but incorrectly cast the issue as a factual dispute.  (*See, e.g.*, Opp. 12, 20.)  It is not.  Taking their own allegations as true, Plaintiffs fail to plead monopoly power, requiring dismissal.  (Section III.)

*Fourth*, the Motion established that Plaintiffs fail to allege antitrust injury in this same alleged market, as they are neither competitors nor consumers in that market.  (Mot. 18–20.)  In their Opposition, Plaintiffs concede that they allege only *downstream* administrative delays.  (Opp. 18–19.)  This makes clear that the injuries alleged are experienced, if at all, in a *separate*

**DEFENDANT'S REPLY – Page 2**

market in which Plaintiffs are consumers.  Injury experienced in a different market from the one underlying the antitrust claim in which the anticompetitive conduct is alleged to take place is insufficient as a matter of law to plead that antitrust claim.  (Section IV.)

*Fifth*, the Motion established that Plaintiffs failed to state a claim under the essential facilities doctrine and for their three non-antitrust claims.  (Mot. 21–25.)  In their Opposition, Plaintiffs fail to defend (or mention) the essential facilities claim and affirmatively disclaim the non-antitrust claims, declaring them mere "context".  (Opp. 6.)  (Section V.)

<u>**ARGUMENT**</u>

**I.    NO ANTICOMPETITIVE CONDUCT (COUNTS I–V).**

**A.    Plaintiffs' Product Design Claims Are Not Actionable.**

The case is premised on the allegation that Epic "constructed and maintained a technological ecosystem that fragments patient health data".  (*See*, *e.g.*, Compl. ¶ 117.)  As set forth in Epic's Motion, whatever grievances Plaintiffs claim to have with Epic's software design, the antitrust laws offer no remedy.  (Mot. 10–12.)  The Fifth Circuit has held there is no "anticompetitive conduct as a matter of law" even if a defendant brings a product to market with "design flaws" and declines to "redesign the product to cure them".  *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 897–98 (5th Cir. 2016); *see also Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 999 (9th Cir. 2010) ("[P]roduct introduction must be alleged to involve some associated conduct which constitutes an anticompetitive [act]".).  Plaintiffs concede as much:  the "antitrust law does not require firms to redesign products".  (Opp. 16.)  Plaintiffs' efforts to avoid the consequences of this undisputed law fail.

*First*, Plaintiffs dispute that they take issue with "ordinary" product design and instead now denominate their allegations as "platform conduct".  (Opp. 15–16.)  But Plaintiffs continue

**DEFENDANT'S REPLY – Page 3**

to make clear that what they are actually challenging is Epic's "interoperability architecture",

"authentication systems", "application programming interfaces", and "technical governance".

(*See, e.g.*, Opp. 14–15.)  That is inactionable product design, no matter what Plaintiffs call it.

*Second*, Plaintiffs' attempt to analogize this case to *United States v. Microsoft Corp.*, 253

F.3d 34 (D.C. Cir. 2001), fails.  Plaintiffs meekly argue that *Microsoft* "requires courts to

examine the practical operation and competitive effects of platform conduct".  (Opp. 15.)  Not

so.  As a matter of law, courts decline to balance the benefits of product design against its alleged

anticompetitive effects: "[A]s all courts recognize, product improvement . . . is . . . beyond

antitrust challenge".  *See Allied Orthopedic Appliances Inc.*, 592 F.3d at 1000.  Moreover, in

*Microsoft*, the products at issue had "the effect of significantly reducing usage of rivals'

products".  *Microsoft*, 253 F.3d at 65.  Here, by contrast, the Complaint is devoid of any facts—

or even a theory—explaining how Epic's product design might have such effect beyond

Plaintiffs' now-disclaimed assertion that Epic has a duty to deal with its competitors.  (*See infra*

Section I.B); *see also Simon & Simon, PC v. Align Tech., Inc.*, No. CV 19-506 (LPS), 2020 WL

1975139, at *7 (D. Del. Apr. 24, 2020) ("Plaintiff['s] conten[tion] that [defendant] should have

designed its scanner to make it easier . . . for [customers] to order scans from [defendant's]

competitors . . . *is just another refusal to deal claim*".).  And finally, *Microsoft* addressed an array

of anticompetitive licensing agreements, which were *supplemented* by restrictive technological

measures.  *Microsoft*, 253 F.3d at 59–65.  Here, there is no allegation of independent

anticompetitive conduct beyond Epic's product design.  Indeed, a district court bound by the

*Microsoft* decision *dismissed* an antitrust challenge to a new drug's formulation where no

independent exclusionary conduct was alleged.  *Walgreen Co. v. AstraZeneca Pharms. L.P.*, 534

**DEFENDANT'S REPLY – Page 4**

F. Supp. 2d 146, 150–51 & n.5, 153 (D.D.C. 2008) (rejecting plaintiffs' *Microsoft* "analogy" as "fail[ing] on the facts" in the absence of independent exclusionary conduct).

*Third*, Plaintiffs argue that Epic's product design is not merely inconsistent with Plaintiffs' preferences, but rather is contrary to the "federal policy" reflected in the Cures Act and HITECH Act.  (*See* Opp. 3–6.)  Either way, product design is not actionable under the *antitrust* laws.  (*See* Mot. 10–12.)  Indeed, "detailed regulatory scheme[s]" like the ones Plaintiffs invoke "raise[] the question whether the regulated entities are [immune] from antitrust scrutiny altogether".  (Mot. 12–14 (quoting *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 406–07 (2004)).)  Plaintiffs acknowledge the highly technical landscape of this regulatory regime, including the "detailed requirements" promulgated to implement the Cures Act (Compl. ¶ 14), yet they ignore *Trinko*'s teaching that such regulatory regimes weigh *against* antitrust redress.  That is hornbook antitrust law, under which Plaintiffs' claims are inactionable.

*Fourth*, Plaintiffs pivot to a theory that Epic "market[ed] itself" as an interoperability leader while maintaining product features that contradict its marketing.  (Opp. 14.)  As an initial matter, Plaintiffs do not allege anything of the sort in the Complaint.  (*See* Compl. ¶¶ 278–311.)  But even if they had, the Fifth Circuit "sets an extremely high bar" for antitrust claims based on false advertising: the alleged statements must have "the potential to eliminate, or did in fact eliminate, competition" because "false advertising alone hardly ever operates in practice to threaten competition".[2]  *Retractable Techs., Inc.*, 842 F.3d at 894–95; *see also NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 136–37 (1998) (declining to "transform" alleged "regulatory fraud" into a "treble-damage[] antitrust case[]" because other laws provide adequate remedies).

---

[2] Plaintiffs focus on "TEFCA participation [and SSA] connectivity" as part of the "marketing" at issue, but do not actually dispute (nor could they) Epic's participation in TEFCA and industry leadership in SSA record exchange.  (*See* Opp. 16.)

**DEFENDANT'S REPLY – Page 5**

Plaintiffs fall far short of clearing that bar; the Complaint is devoid of any allegations of "marketing" activity that misleads major hospitals into purchasing Epic's software in lieu of some other, supposedly less-fragmented option.[3]

### B. Epic Has No Antitrust Duty To Deal with Competitors.

Plaintiffs alleged in their Complaint that Epic designed its software so that competitors cannot easily aggregate records stored in Epic's software. (*See, e.g.*, Compl. ¶¶ 102, 282, 289, 295.) But that is simply a complaint that Epic did not lend its competitors a helping hand. Epic explained in its Motion that this theory fails as a matter of law because under *Trinko*, Epic has no duty to deal with competitors—let alone design its products on terms they prefer. (Mot. 12–14.)

Plaintiffs do not dispute this black-letter law. Instead, Plaintiffs contend that this doctrine does not apply because Plaintiffs are a "class of patients and their proxies" who do not seek "compelled dealing among competitors" but instead seek different record access for themselves. (Opp. 15.) This new framing dooms the claims even further. Anticompetitive conduct must, by definition, harm *competition*. But if "[t]his case concerns . . . conduct affecting patients and authorized representatives" (Opp. 15)—rather than Plaintiffs' alleged injury somehow flowing from an underlying harm to competition—then the alleged conduct is not anticompetitive. *See, e.g.*, *Power Analytics Corp. v. Operation Tech., Inc.*, 820 F. App'x 1005, 1016 (Fed. Cir. 2020) ("Antitrust laws . . . protect against harm to the *competitive process*. . . . Thus, exclusionary conduct under § 2 must do more than reduce consumer welfare".). Plaintiffs' principal case confirms this is fatal: "[T]o be condemned as exclusionary, a monopolist's act must . . . harm the competitive process and *thereby* harm consumers". *Microsoft Corp.*, 253 F.3d at 58.

---

[3] Plaintiffs fail to state a plausible claim under Rule 8(a), let alone under Rule 9(b)'s heightened pleading requirement, which "applies by its plain language to *all* averments of fraud, whether . . . part of a claim of fraud or not". *Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023). As such, amendment would be entirely futile here.

**DEFENDANT'S REPLY – Page 6**

## II.    PLAINTIFFS FAIL TO ALLEGE A RELEVANT PRODUCT MARKET FOR THEIR ATTEMPTED MONOPOLIZATION CLAIMS (COUNTS II AND V).

In its Motion, Epic demonstrated that Plaintiffs fail to plausibly allege that Epic attempted to monopolize the alleged market for "platforms and services that allow patients and authorized entities to retrieve electronic health records from multiple healthcare providers". (Mot. 15–17 (quoting Compl. ¶ 263).)  The Opposition offers no meaningful response.  Instead, Plaintiffs try to flip the burden by complaining that "*Epic* never identifies a single coherent market".  (Opp. 10.)  Epic did not do so because it is Plaintiffs' burden to define a relevant market—not Epic's—and Plaintiffs failed to do so.

*First*, Epic argued that Plaintiffs' allegations regarding this alleged market are internally inconsistent and thus improperly pleaded.  (*See* Mot. 15–16.)  The Opposition compounds the confusion by defining a market heretofore unmentioned—one that includes interoperability but omits aggregation (Opp. 19)—and claiming that Plaintiffs allege these as *alternative* markets (Opp. 9–10).  The Complaint makes no such allegation.  (*See*, *e.g.*, Compl. ¶ 251.)  And even if it had, Plaintiffs fail to define *any* of these markets (whether alternative or otherwise) "with reference to the rule of reasonable interchangeability and cross-elasticity of demand", as required to survive dismissal.  *Rx Sols., Inc. v. Caremark, L.L.C.*, 164 F.4th 436, 442 (5th Cir. 2026).  Plaintiffs may not offer vacillating, inconsistent, and vague market allegations; courts routinely dismiss on the basis of this sort of "blatant inconsistency" in alleged markets.  (*See* Mot. 15–16.)  Rule 8(d)'s tolerance of pleading in the alternative does not excuse this failure.  Rule 8(d) does not license alternative markets, none of which is defined by substitutes or boundaries.  Courts routinely dismiss where, as here, the pleaded market is internally inconsistent or facially unsustainable.  (*See* Mot. 15–16.)

**DEFENDANT'S REPLY – Page 7**

*Second*, as set forth in Epic's Motion, Plaintiffs do not allege that Epic participates in this market *at all*.  (Mot. 16–17.)  To the contrary, Plaintiffs allege that Epic's MyChart "fragments" records across providers, rather than allowing retrieval "from multiple healthcare providers". (Mot. 16–17 (citing Compl. ¶¶ 170–172, 263).)  In their Opposition, Plaintiffs offer no response to this point, thus conceding that Epic does not participate in this alleged market as Plaintiffs have defined it.  (*See* Opp. 8–11.)  That is fatal.  *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) (explaining that, in attempted monopolization cases, what matters is the "defendant's economic power *in that market*"); *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 335 (5th Cir. 2015) ("[T]he essential attributes of illegal monopoly power are judged by the monopolist's *participation in the relevant market*".).

### III.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE MONOPOLY POWER IN THE PURPORTED ENTERPRISE EHR SOFTWARE MARKET (COUNTS I, III–IV).

As Epic explained in its Motion, Plaintiffs' monopoly power allegations are predicated on the assertion that Epic has "over 40% of the market share" in an alleged EHR software market. (Mot. 17–18 (citing Compl. ¶ 77).)  Yet in the Fifth Circuit, "as a matter of law, a market share of less than 50 percent is insufficient for a monopolization claim".  *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1190, 1197 (S.D. Tex. 2009); *see also Fed. Trade Comm'n v. Meta Platforms, Inc.*, 811 F. Supp. 3d 67, 122 (D.D.C. 2025) ("[C]ourts generally require a minimum market share of between 70% and 80%" to find monopoly power.).

Plaintiffs' Opposition argues that "[w]hether Epic ultimately controls forty percent, fifty-two percent, or some other percentage of enterprise electronic health record licenses presents a factual question".  (Opp. 13.)[4]  This is wrong as a matter of law.  If Plaintiffs had alleged a high

---

[4] To the extent Plaintiffs are alleging barriers to entry (Opp. 12–13), those allegations are required *in addition to*—not in lieu of—sufficient market share.  *Big River Indus., Inc. v.*

**DEFENDANT'S REPLY – Page 8**

market share and Epic disputed that figure, the dispute would be a factual one.[5]  But where

Plaintiffs fail to allege a share high enough to sustain an allegation of monopoly power, the claim

fails as a matter of law.  *See Rio Grande Royalty Co.*, 786 F. Supp. 2d at 1197 (dismissing

monopolization claim where "it [was] unclear" whether "Defendants had monopoly power").

Plaintiffs also fail on a direct evidence theory, to the extent they were endeavoring to

advance one.  Direct evidence is evidence of "the power to control prices or exclude

competition".  *RecoveryX Livingston L.L.C. v. City of Livingston*, No. 9:24-CV-00193, 2026 WL

811039, at *14 (E.D. Tex. Mar. 24, 2026).  This is a demanding showing, and "[i]n the typical

case there is no direct proof of such an ability".  *Id.*  Allegations regarding "market structure",

such as Plaintiffs' conclusory network effects and switching costs allegations (Opp. 12–13), are

not direct evidence of monopoly power—especially when Plaintiffs allege a market share that is

legally insufficient to sustain monopoly power.  *RecoveryX Livingston L.L.C.,* No. 9:24-CV-

00193, 2026 WL 811039, at *14; *see also Rio Grande Royalty Co.*, 786 F. Supp. 2d at 1197.

## IV.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ANTITRUST INJURY IN THE PURPORTED ENTERPRISE EHR SOFTWARE MARKET (COUNTS I, III–IV).

In its Motion, Epic explained that Plaintiffs failed to allege an antitrust injury in the

alleged market for "enterprise EHR systems used by hospitals and large health systems"

(Compl. ¶ 251), in which Plaintiffs are neither competitors nor consumers.  (Mot. 18–20.)  In

their Opposition, Plaintiffs do not contest this dispositive point.[6]  (*See* Opp. 18–19; Opp. 15

---

*Headwaters Res., Inc.*, 971 F. Supp. 2d 609, 617 (M.D. La. 2013) ("[A]bsent barriers to entry, there is no way to exclude competition thereby controlling prices".).

[5] Plaintiffs' Opposition asserts that Epic's share "may exceed fifty percent of . . . acute-care hospital beds".  (Opp. 11–12 & n.20.)  Even if Plaintiffs had pleaded this instead of the Complaint's 40% figure, that is still far too little.  Further amendment would thus be futile.

[6] Plaintiffs make arguments about the existence of a concrete harm (Opp. 18–19) and causation (Opp. 19–20), but antitrust injury is an independent element of an antitrust claim.  *See*

**DEFENDANT'S REPLY – Page 9**

(conceding that Plaintiffs are not competitors and that "[h]ospitals", not Plaintiffs, "may purchase enterprise software licenses").)  To the contrary, Plaintiffs concede they "are a class of patients and their proxies".  (Opp. 15.)  Patients and proxies do not participate in this market— they do not buy, sell, or use "enterprise EHR systems", which are "used *by hospitals*".  (Compl. ¶ 251.)

Plaintiffs nonetheless claim that they experience "downstream" delays due to MyChart's log-in requirements.  (Opp. 18–19.)  But such effects do not occur in the alleged enterprise EHR software market, and "[p]arties whose injuries . . . are experienced in another market [than the one they defined] do not suffer antitrust injury".  *Norris v. Hearst Tr.*, 500 F.3d 454, 465–66 (5th Cir. 2007).

## V.    PLAINTIFFS ABANDONED ALL REMAINING CLAIMS (COUNTS VI–IX).

Plaintiffs brought four additional claims, all of which fail as a matter of law for the reasons set forth in Epic's Motion.  (Mot. 21–25.)  Plaintiffs make no mention at all of their essential facilities claim (Count VI) in their Opposition.  As to the three non-antitrust claims (Counts VII–IX), Plaintiffs affirmatively abandon them, stating they "do not rely upon" them "as independent causes of action".  (Opp. 6.)  Because Plaintiffs do not defend any of these four claims in their Opposition, they should be dismissed.  *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("This circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss".).

**<u>CONCLUSION</u>**

For the foregoing reasons, Epic respectfully requests that the Court grant its Motion in its entirety with prejudice.

---

*Norris v. Hearst Tr.*, 500 F.3d 454, 465 (5th Cir. 2007) ("[A] plaintiff must prove more than injury causally linked to an antitrust violation, namely: Plaintiffs must prove antitrust injury".).

**DEFENDANT'S REPLY – Page 10**

Dated:  June 26, 2026

Respectfully Submitted,

*/s/ Lauren A. Moskowitz*

Lauren A. Moskowitz (*Pro Hac Vice*)
Yonatan Even (*Pro Hac Vice*)
Noah Joshua Phillips (*Pro Hac Vice*)
Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
lmoskowitz@cravath.com
yeven@cravath.com
nphillips@cravath.com

*/s/ Christopher J. Schwegmann*

Christopher J. Schwegmann
State Bar No. 24051315
Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone:  (214) 981-3800
Facsimile:  (214) 981-3839
cschwegmann@lynnllp.com

*Attorneys for Defendant Epic Systems Corporation*

**DEFENDANT'S REPLY – Page 11**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this filing via the Court's CM/ECF system per Local Rules CV-5 and CR-49 on June 26, 2026.

*<u>/s/ Lauren A. Moskowitz</u>*

Lauren A. Moskowitz

**DEFENDANT'S REPLY – Page 12**